UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD GIROT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 419 |
| ) | |
| MUNICIPAL OFFICERS ELECTORAL ) | Judge Rebecca R. Pallmeyer |
| BOARD of the City of Braidwood, ) | |
| SUE GRYGIEL, KATHLEEN HERBERER ) | |
| and HOMER COLE, both in their official ) | |
| capacities and individually, and the ) | |
| CITY OF BRAIDWOOD, a Municipal ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Girot sought placement on the ballot for the 2003 election for Mayor of the City of Braidwood, Illinois. The City's Electoral Board declared his petition for candidacy invalid, but Girot appealed that decision, and the Illinois Supreme Court ultimately concluded that the Board's procedure violated due process. Specifically, the court sustained Girot's objection to the participation of the City Clerk, herself a witness at the hearing on the sufficiency of Girot's petition, as a member of the Electoral Board who reviewed it. That decision came too late to restore Girot to the ballot, however. On December 24, 2004, he filed another suit in Illinois state court, this time seeking damages for the violation of his due process rights under 42 U.S.C. § 1983 and the Illinois Municipal Code, 10 ILCS 5/29-17. Defendants removed the case to this court and moved for dismissal under the doctrine of *res judicata*. For the reasons set forth below, Defendants' motion is granted.

## FACTUAL BACKGROUND[1]

On December 9, 2002, Plaintiff Richard Girot filed a statement of candidacy and nominating petitions with City Clerk and Defendant Sue Grygiel, seeking his placement on the ballot for Braidwood's upcoming mayoral election. Two weeks later, Braidwood resident Kenneth Keith filed objections to Girot's application, asserting that Girot failed to specify the date of the election in which he sought candidacy; that Girot failed to specify whether he sought inclusion in the primary or the general election; and that Girot failed to bind his petition sheets and statement of candidacy as required by 10 ILCS 5/7-10.[2] As City Clerk of Braidwood, Grygiel ordinarily sat on the Municipal Officers Electoral Board of the City of Braidwood (hereinafter, "Board") to hear and decide objections to election petitions. Plaintiff moved to have Grygiel removed from the Board because she had personally received his petitions and would be testifying on the question of whether they had been bound as required by Illinois law. Girot asserted that because she would be a witness, Grygiel's participation in the Board's review of his petition violated Girot's right to due process. The Board, however, voted to deny Girot's motion for substitution seeking removal of Grygiel.

On January 6, 2003, a hearing was held on the objections to Girot's filing materials. Grygiel testified that she personally received Girot's petitions and they were not bound in any way; on further

---

[1] The facts are essentially undisputed and are set forth in the decisions of the Illinois courts. *See Girot v. Keith*, 341 Ill. App. 3d 902, 793 N.E.2d 935 (3rd Dist. 2003); *rev'd*, 212 Ill.2d 372, 818 N.E.2d 1232 (2004).

[2] Section 10-4 of the Illinois Election Code states, *inter alia*:
[Petition] sheets, before being presented to the electoral board or filed with the proper officer of the electoral district . . . shall be neatly fastened together in book form, by placing the sheets in a pile and fastening them together at one edge in a secure and suitable manner.
10 ILCS 5/10-4.

questioning, Grygiel admitted she was not sure that the petitions were not paper-clipped together when she received them. Girot testified that the petitions were in fact paper-clipped when he presented them to Grygiel and that Grygiel stapled them together; he acknowledged, however, that the petitions bore no apparent staple marks. The Board ultimately struck Girot's name from the ballot by a vote of two to one, with Grygiel casting the deciding vote. The Board made specific findings that Grygiel testified credibly concerning Girot's failure to comply with the fastening requirement of the election code.[3]

Because absentee ballots must be printed in advance of an election, Girot had very little time between the Board's January 6, 2003 meeting and the February 25, 2003 consolidated primary to avoid having to run a write-in campaign. With time running out to restore his name to the ballot, Girot sought an expedited review of the Board's decision pursuant to 10 ILCS 5/10.1. Under this provision of the electoral code, a person disputing the decision of an electoral board may seek judicial review of the decision within ten days, and the reviewing court is required to conduct a hearing within thirty days and promptly render a decision. In his petition for judicial review, Girot named Keith, the Board, and the three members of that Board–Kathleen Heberer, Homer Cole, and Grygiel–in their individual and official capacities as defendants. His petition did not include a claim for damages under either 42 U.S.C. § 1983 or the Illinois Municipal Code. The Circuit Court of Will County concluded the Board's decision was supported by the weight of the evidence and affirmed

---

[3] The Board also asserted that even if Girot's version of events were accurate, Girot would still have failed to properly bind the petitions under the Board's interpretation of the election code. Furthermore, the petition's inadequacies with respect to Keith's other two objections were substantiated and provided independent support for the Board's decision to remove Girot's name from the ballot.

it. Girot appealed to the Third District Appellate Court; some months after the election, that court concluded that Girot's due process right to an impartial tribunal was violated when Grygiel was allowed to sit simultaneously as a witness and a fact finder, but that the error was harmless. *Girot v. Keith*, 341 Ill. App. 3d 902, 803-04, 793 N.E.2d 935, 937-38 (3rd Dist. 2003). The Illinois Supreme Court reversed that decision on October 21, 2004, concluding that "where a member of an election board acts as both a witness and an adjudicator," there is a "clear due process violation [that is] not susceptible to harmless-error analysis." *Girot v. Keith*, 212 Ill.2d 372, 383, 818 N.E.2d 1232, 1239 (2004).

By the time of the Illinois Supreme Court's October 2004 decision, both the 2003 primary and general elections in the City of Braidwood were a distant memory. Girot filed a new lawsuit in Illinois state court asserting federal and state law claims for the recovery of damages and attorneys' fees from the City of Braidwood (hereinafter, "City"), the Board, and the three members of the Board. Following removal of the case to federal court, Girot filed an amended complaint against the City and Grygiel only, seeking damages under 28 U.S.C. § 1983 against the City (Count I) and Grygiel in her individual capacity (Count II). Count III, brought against the City, seeks damages under 10 ILCS 5/29-17.[4]

---

[4] 10 ILCS 5/29-17 provides a state cause of action for the deprivation of election-related constitutional rights:
> Any person who subjects, or causes to be subjected, a citizen of the State of Illinois or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States or of the State of Illinois, relating to registration to vote, the conduct of elections, voting, or the nomination or election of candidates for public or political party office, shall be liable to the party injured or any person affected, in any action or proceeding for redress.

4

# DISCUSSION

Defendants argue that this action is barred under the doctrine of *res judicata*. As an additional basis for judgment in her favor, Grygiel argues that the claims against her must be dismissed on the basis that she is absolutely immune from liability. In regards to the state claims, the City moves for summary judgment on the basis that it is entitled to absolute immunity under the common law and the Illinois Tort Immunity Act, 645 ILCS 10/2-201. For the reasons stated below, the court agrees that the Illinois Supreme Court judgment in favor of Plaintiff precludes federal review of these claims against Defendants under the doctrine of *res judicata*. Therefore, the court finds it unnecessary to address Defendants' additional arguments.

## I.    Res Judicata

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, Congress requires that federal district courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged."[5] *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982); *Jaskolski v. Daniels*, 427 F.3d 456, 460 (7th Cir. 2005). This command extends to state-court judgments entered in proceedings to review the decision of a state administrative agency. *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 634 (7th Cir. 2004) (referring to the holding in *Kremer*, 456 U.S. 461). The Seventh Circuit observes that "[a] judgment of a state court sitting in an administrative review capacity will have preclusive effect on claims and

---

[5]    Act of May 26, 1790, ch. 11, 1 Stat. 122, 28 U.S.C. § 1738 states, "[J]udicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Section 1738 is to apply in every case unless a later statute contains an express or implied partial repeal. *Allen v. McCurry*, 449 U.S. 90, 99 (1980). 42 U.S.C. § 1983 does not contain such an exception. *Id.*

issues brought in subsequent lawsuits according to the law of the state where the judgment was rendered. But a federal court can deny preclusion if the state-court proceedings denied the parties a full and fair opportunity to litigate by falling below the minimum requirements of due process." *Id.* (citations omitted). Whether this case is barred is thus governed by a two-pronged analysis: the court first assesses the applicability of *res judicata* under Illinois law and then considers whether plaintiff had a full and fair opportunity to litigate his civil rights claim in the prior state court proceeding. *Id.* at 635.

Under Illinois law, *res judicata* applies when each of the following three requirements are satisfied: (1) the state-court decision is a final judgment on the merits; (2) the state-court decision involved the same parties or their privies; and (3) the state-court decision presented the same cause of action as the one currently before the court. *See id.*; *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002); *Bajwa v. Metropolitan Life Ins. Co.*, 208 Ill.2d 414, 433, 804 N.E.2d 519, 532 (2004). There is no dispute here with respect to the first of these requirements: The decision of the Illinois Supreme Court in favor of Plaintiff is a final judgment on the merits. *See Girot v. Keith*, 212 Ill.2d 372, 818 N.E.2d 1232 (2004). Whether the "same parties" and "same cause" tests are met is discussed below.

### A. Same parties

*Res judicata* bars this action only if the prior decision involved the same parties. Girot, the Plaintiff here, himself was the plaintiff in the earlier state court administrative appeal, and at least one of the Defendants, Grygiel, was a named party in the administrative appeal, as well. The other Defendant in this case, the City of Braidwood, was not itself named in the prior state court action, but the City's Electoral Board was named as a defendant and the two are in privity. *See, e.g., Davis v.*

*City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995) ("[The plaintiff] has no quarrel with the Personnel Board; he now pursues the City and [a city official]. This is a distinction without a difference. The Personnel Board is *part* of Chicago and acted on the City's behalf; it is not a separate legal entity."). Having named effectively the same parties in this suit as he named in his previous suit, this element of the Illinois *res judicata* test seems clearly satisfied.

Plaintiff contends, however, that the City and Grygiel were named as parties in the state action only because this was necessary to invoke the jurisdiction of the Circuit Court for purposes of review under the Illinois Election Code. According to Plaintiff, Keith, the objector, was the sole *real* named party to the prior suit. The sole case cited by Girot for this argument, *Russ v. Hoffman*, 288 Ill. App. 3d 281, 681 N.E.2d 519 (5th Dist. 1997), is not helpful to him. In *Russ*, as in Girot's state case, a candidate sought judicial review of an electoral board decision under the expedited review procedures. *Id.* at 282, 681 N.E.2d at 520. The candidate in *Russ* did not name the electoral board or any of its members as defendants, however, and the court concluded that the electoral board and its individual members "are necessary parties to an appeal from" a board's decision "because each of the Board members signed the written decision from which the plaintiff seeks judicial review." *Id.* at 283-84, 681 N.E.2d at 521. Though Girot suggests that *Russ* shows that the electoral board and its members are only nominal parties to the administrative review procedures, in this court's view the *Russ* case establishes the contrary. Regardless how *Russ* is interpreted, this court concludes that the "same parties" test is met here, where both the City and Grygiel were effectively named parties in the administrative appeal and as Defendants in this case.

### B. Same cause of action

The third necessary element for application of the Illinois doctrine of *res judicata* requires the court to determine whether Plaintiff's administrative appeal of the Board's decision to strike his name from the ballot comprises the same cause of action as his claims in this case. In making this determination, the court applies the Illinois courts' "transactional test," under which the "assertion of different kinds of theories of relief still constitutes a single cause of action" for the purpose of *res judicata* "if the single group of operative facts gives rise to the assertion of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 310-11, 703 N.E.2d 883, 893 (1998); *see also Garcia*, 360 F.3d at 637 (observing that prior to *River Park*, Illinois courts were free to use the alternate "same evidence" test which would bar a second suit if the evidence needed to sustain it would have sustained the first suit; under that test, application of *res judicata* depended upon the relief requested by the plaintiff, a matter not at issue in the "transactional test"). When considering whether the claims in the instant case are the same as those in the prior judicial review of the Board's decision, it is important to remember that "for purposes of a section 1983 action, the rule of *res judicata* applies to those issues actually litigated *as well as those that could have been but were not litigated in the state court proceedings.*" *Licari*, 298 F.3d at 667 (emphasis in original; citations omitted).

The Board's decision turned on whether Girot had substantially complied with the binding requirements set out in the Illinois Election Code in filing his petitions for mayoral candidacy. If the facts relevant to this issue were the "operative facts" at issue in this case, then arguably Plaintiff's instant federal and state claims would not constitute the same cause for purposes of *res judicata*. Preclusive effect, however, is given to the state court judgment reviewing the administrative decision, not to the administrative decision itself. Accordingly, the court directs its attention to the

8

transaction at issue in the state court judgment. *See Garcia*, 360 F.3d at 638 n.8. ("The 'core of operative facts' underlying the Board's decision was indeed limited to the circumstances surrounding the heart attack. But, the adjudication which this court views as now having a preclusive effect is the *circuit court's* affirmance of the Board's decision, and not the Board's decision itself."). In rendering final judgment for Plaintiff on his due process challenge, the Illinois Supreme Court focused on the Board's decision to allow Grygiel not only to offer testimony at the Board hearing but also to sit in judgment of that testimony. This is exactly the same transaction from which Plaintiff's instant 42 U.S. § 1983 and 10 ILCS 5/29-17 claims arise.

Plaintiff argues that the administrative appeal and his current damages claims "seek different objectives and interests." (Plaintiff's Response to Defendant's Motion for Summary Judgment, hereinafter, "Pl. Resp.," at 5.) Plaintiff characterizes the action before this court as essentially a tort action in which the Plaintiff seeks personal relief, and characterizes the administrative review preceding as one in which he was seeking to vindicate the rights of the voters. While there is some intuitive appeal to this argument, Illinois law does not test the identity of claims by looking for a unity of objectives and interests between the claims asserted. Instead, the court considers only whether or not the claims arise out of a single group of operative facts. *River Park*, 184 Ill.2d at 310-11, 703 N.E.2d at 893. As the Seventh Circuit explained in *Garcia*, Illinois courts "focus on the bounds of the transaction at issue while disregarding the number of substantive theories, [and] the variant forms of relief [that] flow[ ] from those theories." *Garcia*, 360 F.3d at 637. Plaintiff here urges that by seeking judicial review of the Board's decision, he sought to have his name restored to the ballot for the good of all the citizens of the City of Braidwood, while in the instant action, he seeks only personal compensation for the injury done to his own political aspiration. This argument

9

presumes that a difference in substantive theories or a difference in requested relief gives rise to different causes of action. The Illinois "transactional test" simply rejects this distinction.

The court concludes that all three requirements for application of *res judicata* are present here.

## II. Full and Fair Opportunity to Litigate

Even where all requirements for application of *res judicata* have been met, however, the previous Illinois state court proceedings will not bar this claim if the court concludes that in those earlier proceedings Plaintiff did not have a full and fair opportunity to litigate the federal and state damages claims before this courts. *Licari*, 298 F.3d at 666-67 ("An exception to the *res judicata* rule exists if the plaintiff did not have a full and fair opportunity to litigate his claim in state court."); *cf. Kremer*, 456 U.S. at 481 ("[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."). This principle does not require a showing that the claims at issue were actually presented in the previous action; so long as Plaintiff *could have* joined the instant damages claims with his administrative appeal of the Board's decision to remove his name from the ballot, he will be found to have had a full and fair opportunity to litigate those claims. *See Garcia*, 360 F.3d at 639; *Davis*, 53 F.3d at 802 (noting that Illinois, like most other states, applies the doctrine of merger and bar, precluding the sequential pursuit not only of claims actually litigated, but also of those that could have been litigated in the first action).

In several decisions, the Seventh Circuit has recognized that under Illinois law, a plaintiff can join a full-blown § 1983 claim to even a very limited, on-the-record judicial review of an agency decision. *See, e.g., Garcia*, 360 F.3d at 642 (administrative review of a denial of duty-related pension

10

benefits by the police pension board bars subsequent Title VII and § 1981 claims by a Hispanic police officer alleging that this denial constituted retaliation and employment discrimination); *Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (*Rooker-Feldman* doctrine applies to bar a police officer's § 1981 and § 1985 claims following the full administrative review of the police board decision terminating him); *Durgins v. City of East St. Louis*, 272 F.3d 841, 843-44 (7th Cir. 2001) (police officer's failure to raise free speech challenge in administrative review of a police board decision to terminate her for falsifying her credentials barred a subsequent § 1983 claim alleging that constitutional violation); *Hagee v. City of Evanston*, 729 F.2d 510, 511-12, 514-15 (7th Cir. 1984) (judicial review of a zoning board decision halting construction barred a later § 1983 damages action alleging that the zoning board decision deprived the plaintiff of property without due process). In *Davis*, the Court of Appeals observed that "we have long believed that Illinois permits persons to join constitutional claims under § 1983 with requests for administrative review . . . . [T]he Supreme Court of Illinois has endorsed our understanding of state law." 53 F.3d at 803 (citing *Stratton v. Wenona Community Unit District No. 1*, 133 Ill.2d 413, 429-30, 551 N.E.2d 640, 646-47 (1990)).

Plaintiff nevertheless insists he had no full and fair opportunity to bring the instant damages claims in the prior proceedings. He contends, first, that had he filed his § 1983 claim with his administrative appeal, Defendants "would have removed the case to [f]ederal [c]ourt." (Pl.'s Resp., at 7.) Indeed, when Plaintiff did in fact bring a § 1983 claim, this is exactly what Defendants did. Plaintiff had good cause to fear delay because he had only a limited amount of time to achieve his immediate objective: having his name placed on the City of Braidwood ballot. Plaintiff contends that removal of the case and litigation of his damages claims in this court might have taken so long that by the time a federal court reversed the Board's decision on due process grounds, it would have been

11

too late to get back on the ballot.[6] But although Plaintiff believed his "best course" was to delay his federal claims pending resolution of the administrative appeal (*id.*), he does not suggest that either the federal or state court reviewing the Board's decision would have refused to hear his damages claims. Good litigation strategy does not trump the doctrine of *res judicata*. In short, Plaintiff made a strategic choice not to bring his claim for damages and instead to pursue restoration to the ballot.

Competing with Plaintiff's interest in seeking prompt equitable relief but deferring resolution of his damages claims is the judicial interest in economy and his opponents' interest in the minimization of litigation costs. *Davis*, 53 F.3d at 803 ("Preclusion serves a vital purpose, inducing people to combine claims and theories that are efficiently litigated jointly, and preventing the waste of judicial resources (and the adverse parties' time) that sequential suits create."). And while Plaintiff is free to pursue any litigation strategy he likes, "he must abide by the consequences of those choices." *Garcia*, 360 F.3d at 644 (citing *Davis*, 53 F.3d at 803 ("[The plaintiff] split his claim for his own reasons: he wanted simple, streamlined litigation in the Circuit Court of Cook County so that he could get back pay as quickly as possible. His § 1983 claims against the [defendants] are more complicated and have lower stakes, so he wanted to postpone them. . . . That is an understandable strategy but not a good reason for foisting two suits on the judicial system and his adversary. Having made a tactical choice to expedite decision, [the plaintiff] must accept the consequences.")). Here the consequence is that in assigning greater priority to getting back on the

---

[6] As it turns out, of course, the state court proceedings also ultimately proved too lengthy to afford Plaintiff this relief. For purposes of this decision, however, the court will assume that Plaintiff's ex ante calculus about the choice between federal and state court was reasonable.

ballot than recovering damages from the due process violation he suffered, Plaintiff has effectively waived the damages claim.

As Plaintiff correctly notes, in many of the cases cited for the proposition that a § 1983 claim may be joined with judicial review of an agency decision, the litigants did not face time constraints like those presented here. The cases are clear, however, that the existence of such time constraints by itself does not prevent full and fair litigation. In *Garcia*, for example, plaintiff was required to appeal the adverse administrative decision promptly; he was unable to proceed promptly on his Title VII claim without exhausting available state remedies, a time-consuming process. The court nevertheless held that Garcia's failure to raise his civil rights claim as part of the state administrative review procedure resulted in loss of that claim: "Because Illinois circuit courts could have exercised jurisdiction over Garcia's federal civil-rights claims (either directly or after Garcia exhausted available administrative remedies), Garcia could have joined those civil-rights claims with his administrative appeal of the Board's decision. Consequently, he had a full and fair opportunity to litigate his civil-rights claims in the Illinois legal system." 360 F.3d at 639. The *Garcia* court noted that "[t]he practical difficulties of exhaustion will not prevent *res judicata* from applying." *Id.* at 642. When faced with this sort of problem, the Seventh Circuit observed:

> Ordinarily . . . the statutes of limitations governing the plaintiff's other claims will not be so short that he risks being barred from pursuing those claims by waiting to complete the Title VII administrative process. *If [a plaintiff] does face a looming deadline for suing on his other claims, he can ask the EEOC or its state counterpart to accelerate the administrative process; he will have good cause for doing so.* . . . *[The plaintiff] can sue on his other claims, ask the court--and again he would have a very strong case for doing so--to stay the proceedings, until the Title VII administrative process is complete* . . . . These possibilities make the danger that applying res judicata in Title VII suits will interfere with legislative design remote.

13

*Id.* at 643 (quoting *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225 (7th Cir.1993) (emphasis original to *Garcia*)). Here, similarly, where time was of the essence for Plaintiff, he was free to join the damages claims to his petition for review of the Board's decision and ask the state court (or this court, if the case were removed), for an expedited review of the Board's decision.[7] Here, as in *Garcia*, procedures exist which might have allowed Plaintiff to mitigate the unpleasant side-effects of his strategic choice and his failure to avail himself of them does not mean that he was denied a full and fair opportunity to pursue these claims in the prior proceedings.

Pressing his argument that the time constraints he face precluded presentation of his damages claims in the earlier proceeding, Plaintiff cites *Jones v. City of Alton*, 757 F.2d 878 (7th Cir. 1985), for the proposition that the application of *res judicata* is subject to equitable principles. (Pl. Resp., at 3-4, 11.) *Jones*, however, states only that the application of the doctrine is subject to the requirement that the party have had a prior full and fair opportunity to litigate the claim. The *Jones* court observed that "[W]hile the purpose of [*res judicata*] is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all. . . . In this sense the doctrine is an equitable doctrine, and subject to equitable principles." 757 F.2d at 885 (internal quotation marks omitted) (citing *Gay v. Open Kitchens*, 100 Ill. App. 3d 968, 971, 427 N.E.2d 338, 341 (1st Dist. 1981)).

---

[7] Plaintiff argues that even if he had succeeded in obtaining an expedited decision on the judicial review of the Board's decision to remove his name from the ballot, the very presence of a pending damages action against the Board members would have required all three of them to be replaced for bias, entailing additional delay. (Pl. Resp., at 7.) This argument is puzzling; the due process violation found, a biased tribunal, was based not just on Grygiel sitting as both a witness and a fact finder, but the Board's decision to allow her to do so in spite of Girot's objections. In this sense, even without additional pending litigation, one might suspect that all three Board members would have to be replaced anyway before Girot could get a fair hearing.

In *Jones*, the state circuit court reviewing an administrative decision explicitly refused to hear plaintiff's employment discrimination arguments, erroneously concluding that it was limited to considering only matters that could have been brought before the commission whose decision it was reviewing. See 757 F.2d at 881. When the *Jones* plaintiff later brought § 1983 and Title VII actions against his employer raising these employment discrimination arguments, the district court dismissed the case on *res judicata* grounds, but the Seventh Circuit reversed, noting that plaintiff had been deprived of a full and fair opportunity to raise the federal claims during the state court administrative review. Id. at 887. Plaintiff in the instant action neither alleges that he raised his § 1983 claim in the prior proceeding nor that any Illinois court denied him the opportunity to do so.[8]

Plaintiff also argues that he could not have litigated his damages claims in the prior proceedings because at least his § 1983 claim was not ripe. (Pl. Resp., at 12.) To support this argument, Plaintiff characterizes his injury as occurring only once he had lost the election. At that point his appeal from the Board's decision was already pending before the Third District Illinois Appellate Court and he could not join a new claim. (Id.) In his complaint, however, Plaintiff identifies his injury as the violation of his due process rights that occurred when the Board voted to deny Girot's motion for substitution seeking the removal of Grygiel. According to Plaintiff's

---

[8] Plaintiff also cites *Staats v. County of Sawyer*, 220 F.3d 511 (7th Cir. 2000), for the proposition that the application of *res judicata* is subject to general equitable principles. Plaintiff there initially brought a Wisconsin Fair Employment Act (hereinafter, "WFEA") claim, which under Wisconsin law must be brought before a state administrative body of limited jurisdiction. Id. After an adverse decision on this claim was upheld by a Wisconsin state court on administrative review, plaintiff filed an Americans with Disabilities Act (hereinafter, "ADA") claim in federal court. Id. at 513-14. The Seventh Circuit held that because Wisconsin law allowed and indeed required claim-splitting with respect to WFEA and ADA claims, Wisconsin law would not give preclusive effect to the former with respect to the latter. Id. at 516-17. Illinois law as demonstrated by the Seventh Circuit cases cited in text above is to the contrary.

complaint he was denied a "fair hearing" and "his Fourteenth Amendment due process rights of an impartial hearing on his election petitions." (Amended Complaint, hereinafter "Am. Compl." ¶ 20.) Similarly, Plaintiff's statement of damages in the complaint alleges that the Board "deprived [Plaintiff] of his right to due process and impeded the due course of justice." (Id. ¶ 23.) The case law that supports this claim demonstrates that due process requires that a party appearing before an administrative tribunal must be judged by an unbiased decision-maker. *Ryan v. Landek*, 159 Ill. App. 3d 10, 12, 512 N.E.2d 1, 2 (1st Dist. 1987). As the Illinois Supreme Court held in Girot's own appeal, Girot's due process rights were violated by an electoral board determination in which one of the decision-makers served as a member of the Board and participated as a witness at Girot's hearing. That injury occurred on January 6, 2003, and that is the date on which Plaintiff's § 1983 claim was ripe.

Plaintiff offers *Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004), and *Rooding v. Peters*, 92 F.3d 578 (7th Cir. 1996), in support for his ripeness argument, but both cases are distinguishable. In *Hileman*, several days before an election the police seized a cache of absentee ballots and paraphernalia suggesting that the county clerk had been removing votes for the plaintiff and replacing them with votes for the challenger. 367 F.3d at 695. On the day of the primary, the seized ballots were inexplicably commingled with the ballots validly cast that day and counted. *Id.* The key issue before the court was whether plaintiff's § 1983 claim accrued on the date the ballots were seized or on the date of the primary election. The *Hileman* court picked the latter date because knowing only that falsified ballots had been removed by the police on the earlier date, a reasonable candidate might believe at that time that a constitutional violation had been foiled rather than perpetrated. *Id.* at 697-98. The *Hileman* plaintiff "had no reason to suspect that she had suffered a constitutional

injury until she was made aware of the inexplicable decision to return the tainted ballots to County Clerk Maze, and, in turn, the decision to commingle those ballots with the untainted ones." *Id.* at 698. Remembering that a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated," *id.* at 694, Plaintiff in the instant case cannot claim that he did not know his due process right to an impartial tribunal was violated at the time that Grygiel was allowed to sit in her dual role. Plaintiff himself had asked that she be removed from the Board, and he knew that she cast the deciding vote to reject his application for placement on the ballot.

Nor is *Rooding* of any assistance. In that case, plaintiff was a prisoner who brought a successful mandamus action in which he alleged that his incarceration violated his rights to equal protection and due process. 92 F.3d at 579. He then filed a § 1983 claim for damages stemming from his unlawful confinement. The Seventh Circuit rejected the Department of Corrections' *res judicata* defense, relying on Heck v. Humphrey for the principle that "an inmate may not file a § 1983 claim for damages that would call into question the lawfulness of his conviction or the duration of his confinement unless he can prove that he has already successfully challenged his conviction or the duration of his confinement." *Rooding*, 92 F.3d at 580 (citing Heck v. Humphrey, 512 U.S. 477, 486 (1994)). Section 1983 actions seeking damages for unlawful confinement are closely related to the tort of malicious prosecution. *Id.* A traditional element of a malicious prosecution claim is the termination of that prosecution in favor of the accused-turned-plaintiff. *Id.* Thus, § 1983 actions based on some permutation of this theme (a wrongful conviction, for instance) do not necessarily ripen at the time of the constitutional violation. That said, a claim of a biased decision-maker, the claim at issue here, is not from the malicious prosecution family of torts and as such is not subject

to its traditional elements, but rather is fully ripe at the time it occurs and Plaintiff is or should be aware of it.

## CONCLUSION

Plaintiff had a full and fair opportunity to raise his § 1983 claims in the prior state court judicial review of the Board's decision to remove his name from the City of Braidwood election ballot. These claims are accordingly barred by *res judicata*, and Defendants' motion for summary judgment as to Counts I and II (Doc. 6) is granted. Having dismissed Plaintiff's federal claims, the court declines to exercise jurisdiction over his pending state law claim.

ENTER:

Dated: January 5, 2006

REBECCA R. PALLMEYER
United States District Judge